# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Next Jump,<br><br>    v.<br><br>United States of America<br><br>*Defendant*. | Case No.:  1:24-mc-00105-TNM |

### NEXT JUMP'S MOTION TO QUASH
### THE GOVERNMENT'S TRIAL SUBPOENA UNDER RULE 17(C)(2)
### <u>RELATED TO *UNITED STATES v. BURKE ET AL*</u>.

Reed Brodsky (*pro hac vice*)
  *Counsel of Record*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
rbrodsky@gibsondunn.com

*Counsel for Next Jump*

ii

Next Jump respectfully moves to quash the trial subpoena served by the United States pursuant to Federal Rule of Criminal Procedure 17(c), seeking documents purportedly related to a pending criminal trial.[1]  *See United States v. Burke et al. (1:24-cr-00265).*  The trial subpoena does not meet the requirements of relevance, admissibility, and specificity.  Instead of seeking to obtain identified evidence for use at trial, the subpoena is a general fishing expedition.

**FACTUAL AND PROCEDURAL BACKGROUND**

Next Jump is a privately held technology and services company that has revolutionized the field of employee engagement and rewards programs since its founding in 1994 by Charlie Kim.  Headquartered in New York City, Next Jump has built a reputation for its innovative approach to enhancing workplace culture and productivity.  The company's core mission revolves around improving the lives of employees through various programs and technologies.  Next Jump provides a robust platform that integrates e-commerce and advertising technologies, enabling companies to offer their employees a range of benefits and rewards.  This platform not only helps in boosting employee morale but also fosters a sense of community and belonging within organizations.  Additionally, Next Jump has dedicated thousands of hours to provide *pro bono* leadership and culture training to thousands of organizations across every industry, including the U.S. military, education, and nonprofit organizations, all toward the goal of living out the company's motto: Better Me + Better You = Better Us.  Next Jump later monetized this

---

[1] The Court's September 4 minute order stated in relevant part: "Petitioner shall file any motion to quash the trial subpoena by or on September 6, 2024."  Accordingly, although Next Jump had moved for a briefing schedule with regard to another subpoena as well, Next Jump addresses its motion solely to the trial subpoena.  Before this Court issued its minute order, the Government filed a separate motion to compel in connection with the other subpoena.  Next Jump will be seeking a briefing schedule in connection with that subpoena.

highly sought-after training and was awarded multiple contracts to provide leadership training to the U.S. Navy.

On May 30, 2024, a grand jury issued an indictment charging Next Jump's co-CEOs, Charlie Kim and Meghan Messenger, with conspiracy, in violation of Title 18, United States Code, Section 371, and bribery, in violation of Title 18, United States Code, Section 201. *See 1:24-CR-265 (TNM)*. On August 2, 2024, the Government issued a trial subpoena to Next Jump seeking to obtain documents and information. *See* Attachment 1. During a meet and confer discussion with the government on August 6, 2024 relating to the subpoena, the government stated that it was not familiar with the *Nixon* standard discussed below, and that the government did not recall hearing about this standard in recent memory. In other words, the government did not consider—much less apply—the *Nixon* standard when drafting its trial subpoena requests.

## **ARGUMENT**

Federal Rule of Criminal Procedure 17(c) provides that a trial subpoena issued in a criminal case "may order [a] witness to produce any books, papers, documents, data, or other objects the subpoena designates." The Rule further provides, however, that a court "may quash or modify the subpoena if compliance would be unreasonable or oppressive." *Id.*

The Supreme Court and this Circuit have applied the Rule narrowly, noting that it "was not intended to provide an additional means of discovery." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *see also United States v. Nixon*, 418 U.S. 683, 698–699 (Rule 17 "was not intended to provide a means of discovery for criminal cases"). Rule 17(c) "is not a discovery device." *United States v. Haldeman*, 559 F.2d 31, 75 (D.C. Cir. 1976).

The Rule was designed to serve as "an aid for obtaining relevant *evidentiary material* that the moving party may use at trial." *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir.

1980) ("*Cuthbertson I*") (emphasis added) ("The test for enforcement is whether the subpoena constitutes a good faith effort to obtain identified evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device."). The Rule's "chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Nixon*, 418 U.S. at 698-99. Therefore, "[t]he test for enforcement is whether the subpoena constitutes a good faith effort to obtain identified evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device." *Cuthbertson*, 630 F.2d at 144.[2]

In *Nixon*, the Supreme Court explained that a Rule 17(c) subpoena must be quashed unless the issuing party can demonstrate:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*Id.* at 699–700. Thus, a party seeking the production of documents "'must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity.'" *United States v. Fitzsimons*, 342 F.R.D. 18, 20 (D.D.C. 2022) (citing *Nixon*, 418 U.S. at 700); *see also United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (same). "A subpoena that fails to satisfy these three requirements will be deemed unreasonable or oppressive and must be either quashed or modified." *Libby*, 432 F. Supp. 2d at 31 (collecting cases).

---

[2] *See also United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984) (Rule 17 subpoenas cannot be used to conduct "blind fishing expedition[s]" of the sort that often occurs in civil discovery) (internal quotation marks omitted); *Cuthbertson I*, 630 F.2d at 146 (Rule 17(c) cannot be used to undercut the "strict limitation of discovery in criminal cases found in [Rule] 16").

Importantly, "[t]he burden of satisfying the 'exacting standards' of the three-part *Nixon* test falls 'on the party requesting the information.'" *Fitzsimons*, 342 F.R.D. at 20 (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 386–87 (2004)).  The government's Rule 17(c) subpoena to Next Jump does not meet these "exacting standards" because it does not satisfy the three-pronged *Nixon* test, and therefore the Court must quash it.

I. **THE GOVERNMENT CANNOT MEET THE RULE 17(C) REQUIREMENTS FOR ITS TRIAL SUBPOENA, AND THEREFORE THE SUBPOENA MUST BE QUASHED.**

   A. **The Government Cannot Meet Its Burden to Demonstrate Relevance and Admissibility Under the *Nixon* Standard.**

Two requirements that a trial subpoena must satisfy are relevance and admissibility.  Relevance requires an assessment of "whether the documents sought have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Libby*, 432 F. Supp. 2d at 31 (quoting Fed. R. Evid. 401).  The requesting party must show that there is a "reasonable likelihood" that the documents sought contain relevant evidence.  *Fitzsimons*, 342 F.R.D. at 21.  The subpoena must be quashed if it demonstrates only a "*mere expectation about what could be recovered without a showing of a sufficient likelihood* that the documents actually contained relevant evidence." *Id.* (emphasis added).

"If the documents are deemed relevant, the Court must then determine whether they would be admissible.  This inquiry is largely governed by the Federal Rules of Evidence." *Libby*, 432 F. Supp. 2d at 31 (quoting Fed. R. Evid. 401–15, 801–07).  Due to the difficulty of determining the admissibility of specific documents at the pretrial stage, the admissibility requirement is satisfied "if a document is arguably relevant and admissible under the Rules of Evidence." *Id.*

Showing documents are "potentially relevant or may be admissible is not sufficient." *United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005); *see also United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981) ("*Cuthbertson II*") ("exculpatory material held by third parties that does not rise to the dignity of admissible evidence simply is not within the rule"). Rule 17(c) is different from the civil rules, which permit seeking the production of documents that *could* lead to admissible evidence, even if the documents themselves are not admissible. *United States v. Libby*, 432 F. Supp. 2d 26, 30 (D.D.C. 2006) (citing *United States v. Cherry*, 876 F. Supp 547, 553 (S.D.N.Y. 1995)).

The Court should quash the government's trial subpoena because the government has not and cannot show that the documents it seeks are relevant or admissible to its prosecution of the individual defendants. The government's statement that the "federal trial subpoena [is] issued in connection with the above-referenced criminal proceeding in the U.S. District Court for the District of Columbia" is insufficient to meet its burden. *See* Attachment 1; *see United States v. Haldeman*, 559 F.2d 31, 76 (D.C. Cir. 1976) (quashing Rule 17 subpoena where issuer did not "attempt any demonstration of materiality or relevance of any file item to the exigencies of his defense"). For example, Request 1 seeks "Outlook calendars" for Mr. Kim and Ms. Messenger from September 1, 2019 through February 28, 2022 without reference to alleged events in connection with the charges and thus will include entirely irrelevant information. A proper request would target specific dates and relevant information on those dates. Another example is Request 2 which seeks "[a]ll records and communications" regarding travel to Washington, DC in July 2201, but does not limit it to specific relevant meetings to the charges. A third example is Request 5 which seeks "[a]ll records and communications" "regarding business with or effort to obtain business from any branch of the United States Armed Forces"—a request far beyond the

allegations in the indictment relating to specific contracts with the United States Navy. Documents or communications, for example, with the United States Air Force have nothing to do with the charges. These examples demonstrate how the government's requests seek documents outside the four corners of the indictment.

Moreover, the breadth of the government's document requests captures information that is completely irrelevant to its prosecution. For example, the government requests, "[a]ll records and communications, both internal and external, regarding business with or effort to obtain business from any branch of the United States Armed Forces, including the United States Navy, the Department of Defense, or any foreign military service." *See* Attachment 1, Request 5. Requesting *all* internal communications regarding *any* "effort to obtain business from any branch of the United States Armed Forces" will encompass a large amount of material that is unrelated to the government's prosecution, as clearly, for example, a hypothetical email exchange between two Next Jump employees about ambitions for a future hypothetical, innocuous military contract is clearly irrelevant to the government's prosecution.

The trial subpoena also appears to call for the production of inadmissible hearsay. The subpoena requests a wide range of "communications" among Next Jump personnel and third parties on various topics, including travel details, hiring discussions, strategic planning, and business judgments. The government has made no effort to explain how any of these "communications" involving unnamed third parties would be admissible at trial.

  **B.**  **The Government's Trial Subpoena Does Not Satisfy *Nixon*'s Specificity Requirement.**

Rule 17(c) subpoenas must meet the specificity requirement. This requirement protects subpoena recipients from "a fishing expedition to see what may turn up." *Libby*, 432 F. Supp. 2d at 32 (internal quotation marks omitted) (quoting *United States v. King*, 164 F.R.D. 542, 545 (D.

Kan. 1996)). The specificity requirement is "satisfied if there is a 'sufficient likelihood,' demonstrated through rational inferences, that the documents being sought contain relevant and admissible evidence." *Id.* 31 (citing *United States v. North*, 708 F. Supp. 402, 404 (D.D.C. 1989)). As a result, courts will quash subpoenas for documents that request disclosures based on "broad categories of documents." *Id.* If the moving party "cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." *Id.* (internal quotation marks omitted) (quoting *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991)). A significant purpose behind the specificity requirement is to make sure that the subpoena recipient has enough knowledge about exactly what documents are requested so the recipient may object on relevancy or admissibility grounds. *Id.* at 32 (quoting *United States v. Anderson*, 31 F. Supp. 2d 933, 945 (D. Kan. 1998).

For these reasons, courts quash Rule 17 subpoenas featuring boilerplate references to "any and all" documents common in civil discovery requests.[3] The government's subpoena fails

---

[3] *United States v. Reyes*, 239 F.R.D. 591, 605-06 (C.D. Cal. 2006) (rejecting subpoena requests for all documents "relating" to the corporation's stock options grant programs or policies); *United States v. Ruedlinger*, 172 F.R.D. 453, 455, 457 (D. Kan. 1997) (rejecting subpoena requests for "any and all audit reports"); *United States v. Jackson*, 155 F.R.D. 664, 668 (D. Kan. 1994) (rejecting requests for "any and all documents," "all correspondence," and "all related records"); *United States v. Louis*, 2005 U.S. Dist. LEXIS 1087, No. 04-cr-203, 2005 WL 180885, at *5-6 (S.D.N.Y. Jan. 27, 2005) (quashing requests seeking "'any and all' documents relating to several categories of subject matter . . . rather than specific evidentiary items"); *cf. Cheney v. United States Dist. Court*, 542 U.S. 367, 387 (2004) (contrasting *Nixon*'s criminal subpoenas, which "precisely identified" and "specific[ally] . . . enumerated" relevant materials, with civil discovery requests that "ask for everything under the sky," and used "[a]ll documents" language); *Khouj v. Darui*, 248 F.R.D. 729, 732 n.6 (D.D.C. 2008) (describing subpoena as "grossly overbroad" when seeking "all documents relating to any account" held by subpoenaed party, without time limitation; particularly with phrases such as "including, but not limited to;"

[Footnote continued on next page]

on these same grounds here. Requests 2 through 6 and Request 8 require the production of "*all records and communications*" for six broad categories of materials relating to a wide range of topics. Request 1 requires the production of all Outlook calendar details "to include meeting dates, times, locations, attendees, written comments and attachments . . . for Charlie Kim and Meghan Messenger" regardless of topic and/or relationship with the criminal case. All of these requests seek "to examine general categories of documents with the hope that they contain information that may be helpful to" its prosecution. *Libby*, 432 F. Supp. 2d at 35. "This is not the proper role Rule 17(c) subpoenas are intended to play in the criminal arena." *Id.*

In short, the government's broad subpoena requests are a fishing expedition and therefore should be quashed.

> C. **The Government Can Obtain Requested Documents From the United States Military.**

Even when a party issuing a subpoena can satisfy the requirements of relevance, admissibility, and specificity—which the Government does not and cannot here—courts evaluate whether the materials at issue are "otherwise procurable reasonably in advance of trial by [the] exercise of due diligence." *Nixon*, 418 U.S. at 699; *see also United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981) ("to justify a subpoena for production before trial, the proponent must also demonstrate that the subpoenaed materials are not available from any other source"); *United States v. Poindexter*, 727 F. Supp. 1501, 1509 (D.D.C. 1989) (Rule 17 requires showing that subpoenaed materials are not "otherwise procurable") (collecting cases).

The government cannot "demonstrate that the subpoenaed materials are not available

---

[Footnote continued from previous page]
and "list[ed] categories of sought after documents that nearly always beg[an] with the word 'all.'").

from any other source." *See Eden*, 659 F.2d at 1381.  Indeed, the trial subpoena requests many communications between Next Jump personnel and the United States military.  The government can and should seek the same communications from the United States military.  This is particularly applicable where the requests impose an unreasonable and debilitating financial burden on the company.  Next Jump is a company with less than twenty-five full-time employees with limited financial resources.  The government rejected Next Jump's requests to provide reasonable funds to allow the company to undertake the substantial financial burden estimated to be in the hundreds of thousands of dollars to identify, collect, review, and produce documents responsive to the subpoena.  Moreover, the requirement to identify, collect, review, and produce documents on an expedited timeframe at the same time the company's very existence hangs in the balance, while its co-CEOs fight the charges in the indictment, is unreasonable.

Because the Government cannot show that a substantial amount of the subpoenaed materials is not "otherwise procurable" from the United States military, the Court should quash the subpoena.  *See Poindexter*, 727 F. Supp. at 1509.

## CONCLUSION

For the foregoing reasons, Next Jump respectfully requests that the Court grant Next Jump's Motion to Quash Trial Subpoena Under Rule 17(C)(2) Related to *United States of America v. Burke*, et al.

*/s/ Reed Brodsky*
Reed Brodsky (*pro hac vice*)

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
rbrodsky@gibsondunn.com

John Matthew Butler (DC Bar No.: 1721350)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.
Washington, DC 20036
Telephone: (202) 955-8500
mbutler@gibsondunn.com

*Attorneys for Next Jump*