**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **NEXT JUMP** | : | |
| | : | **Case No. 24-MC–105 (TNM)** |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Respondent.** | : | |

### UNITED STATES' RESPONSE TO
### NEXT JUMP'S MOTION TO QUASH TRIAL SUBPOENA

The United States of America, by and through its undersigned attorneys, hereby opposes Next Jump's Motion to Quash the Government's Trial Subpoena Under Rule 17(c)(2) (ECF No. 8) ("Motion"). The subpoena Next Jump seeks to quash requires the production of documents relevant to *United States v. Burke*, *et al.* Next Jump's Motion should be denied because the documents requested in the trial subpoena are also admissible and specific, thus satisfying the standard set forth in *United States v. Nixon,* 418 U.S. 683, 41 L.E.2d 1039 (1974).[1]

Simply put, for nearly a year, Next Jump has engaged in a concerted effort to prevent the Government from obtaining documents relevant to its investigation, and now, relevant and admissible evidence for trial. Its intent is laid bare by the fact that Next Jump previously represented to the Government that it had produced all documents responsive to the Government's grand jury subpoena. Yet Next Jump claims, *see* Motion at 10, that compliance with the Government's trial subpoena—which calls for a small subset of the documents previously

---

[1] There was a typographical error in the trial subpoena as to the date range. The correct scope of the trial subpoena should have been September 1, 2019, through February 28, 2023, corresponding to the approximate time period set forth in the Indictment. The Government has attached a revised trial subpoena with the corrected date range. *See* Attachment 1. It is otherwise identical to the subpoena Next Jump received.

requested by grand jury subpoena—would cause the company "an unreasonable and debilitating financial burden." Next Jump's one objective is clear—to avoid and/or delay complying with valid legal process for as long as possible to benefit its co-CEOs, defendants Charlie Kim and Meghan Messenger.[2] The Court should put an end to Next Jump's legal maneuvering, deny its motion, and order its compliance with the trial subpoena.

## I.    LEGAL STANDARD

Rule 17(c)(1) of the Federal Rules of Criminal Procedure provides, in relevant part:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.

Fed. R. Cr. P. 17(c)(1). Rule 17(c) is not intended to provide a means of discovery in criminal cases; rather, its purpose is to expedite trial by "providing a time and place before trial for the inspection of subpoenaed materials," as opposed to producing the documents for the first time "in court before trial." *Nixon*, 418 U.S. at 698-99 (1974) (citation omitted).

Rule 17(c)(2) provides that a district court may quash or modify a subpoena "if compliance would be unreasonable or oppressive." Fed. R. Cr. P. 17(c)(2); *accord Nixon*, 418 U.S. at 698. Pre-*Nixon*, the rule required the party issuing the subpoena had to show that the documents sought: were "evidentiary and relevant," were "not otherwise procurable reasonably in advance of trial by exercise of due diligence," were necessary to proper trial preparation, would tend to delay the trial if withheld, and were not intended as a fishing expedition. *Id*. at 699. "Guided by these factors, the Supreme Court in *Nixon* concluded that to compel production of documents under Rule 17(c), the party seeking production 'must clear three hurdles: (1) relevancy; (2) admissibility; (3)

---

[2] Notably, while Next Jump delays compliance, Kim and Messenger demand that the Court schedule an immediate trial.

specificity.'" *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (quoting *Nixon*, 418 U.S. at 700).   A subpoena that does not meet these criteria "will be deemed unreasonable or oppressive and must be either quashed or modified."   *Libby*, 432 F. Supp. 2d at 31 (citations omitted).   This decision is within the discretion of the district court.   *Nixon*, 418 U.S. at 702 ("Enforcement of a pretrial subpoena *duces tecum* must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues.").   Considering the inherent difficulty in determining pre-trial the admissibility of certain documents, this Court has only required the moving party to establish that the documents are "arguably relevant and admissible under the Rules of Evidence" to satisfy the second prong of the Nixon standard.   *Libby*, 432 F. Supp. 2d at 31.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Grand Jury Investigation

#### i.    First Grand Jury Subpoena to Next Jump

On October 3, 2023, the Government served Next Jump with a grand jury subpoena as part of an investigation into whether Next Jump and its employees, including but not limited to Kim and Messenger, engaged in a bribe scheme to offer post-government employment to Navy Admiral Robert P. Burke in exchange for a government training contract.   The subpoena requested 15 categories of documents for the time period of September 1, 2019, to October 3, 2023.

Subsequently, Next Jump requested that the Government narrow the subpoena and exclude certain categories of documents.   The Government requested potential search terms and suggested revisions from Next Jump, which were never provided.   The Government also agreed to a rolling production of responsive documents.

By March 2024, nearly six months after the subpoena was served, Next Jump had produced a total of approximately 97 pages to the grand jury.   On March 13, 2024, the Government sent

Counsel for Next Jump ("Counsel") an email requesting that the production be completed by March 22, 2024.   The Government received no response.

### ii.    Second Grand Jury Subpoena

On March 11, 2024, following Next Jump's five-month failure to meaningfully respond to the first subpoena, a second grand jury subpoena was issued for the testimony of Next Jump's records custodian.   Two days later, on March 13, 2024, Counsel stated that he needed to meet with Next Jump and review his calendar.   Later that evening, Counsel requested to postpone the subpoena's return date to April, to accommodate a medical procedure, a deposition, and a two-week vacation.   The Government accommodated Counsel's request.

On April 8, 2024, Next Jump produced approximately 96,076 pages to the grand jury, approximately 90,770 of which were Burke's email (which Counsel later indicated was Burke's entire email box and which appears never to have been reviewed for responsiveness – "we thought we would just give you the whole thing").   The remaining 5,304 pages were credit card and bank statements.   In Counsel's cover letter, he represented that "as we carefully went through each of the Subpoena requests, we can report to you that *this production should contain the remaining documents responsive to the government Subpoena that may not already be in the government's possession* in light of the search warrant executed on the cloud of Next Jump's electronic storage, and within the phones of Meghan Messenger and Charlie Kim, both of which phones are in the government's possession, custody, and control."   (Emphasis added.)   To be clear, the Government had not obtained a search warrant for the "cloud of Next Jump's electronic storage,"[3] nor did it ever make such an assertion to Counsel.   And, in subsequent conversations, Counsel

---

[3] With respect to Kim and Messenger, the Government obtained search warrants for the work email accounts and the iCloud accounts associated with their phones.

declined to confirm that any internal networks or share drives existed or, if they did, whether they had been searched as part of Next Jump's compliance with the grand jury subpoena.

On April 30, 2024, the Government notified Counsel that, his assurances notwithstanding, Next Jump's failed to produce documents responsive to eleven (11) of the fifteen (15) requests. The Government also expressed concern that Next Jump had unilaterally—and without any apparent due diligence, agreement from the Government, or legal authority to support such a limitation—taken the position that because the Government had some of Kim and Messenger's emails, it must have every document responsive to the subpoena.

In response, on May 15, 2024, Counsel claimed that Next Jump "conducts the entirety of its business through emails.  Thus, we do not believe that there are any other repositories of information outside of Kim and Messenger's work email accounts."  On May 28, 2024, during a phone call, the Government asked Counsel whether Next Jump had any internal servers or drives that store information.  Counsel dismissed the Government's question, declined to provide a direct answer, and argued that everything is done by email.  These statements appear to be false or incorrect, as they were not consistent with: (i) Counsel's prior representation that Next Jump used "electronic storage"; (ii) Counsel's November 2023 presentation to the Government, which included documents which were not email; and (iii) other evidence obtained in the investigation that indicate that Next Jump utilizes an internal share drive that was accessed by targets and subjects of the investigation.[4]

---

[4] For example, Admiral Burke—who worked at Next Jump beginning in October 2022—told agents that he "got access to their [Next Jump's] internal networks [a]nd as part of my train-up . . . I was going through past seminars that they held. They usually held them in virtual format." One of the seminars Burke viewed on Next Jump's internal networks was one in which Kim "announced on that seminar that he had hired me and I was coming to work at the end of May," which Burke claimed had infuriated him because he (Burke) told agents he made no such agreement.

**B.  Indictment of Kim, Messenger, and Burke**

On May 30, 2024, the grand jury returned an Indictment charging Kim, Messenger, and Burke with Conspiracy, in violation of 18 U.S.C. § 371, and Bribery, in violation of 18 U.S.C. § 201.  *See United States v. Burke, et al.*, 1:24-CR-265 (TNM), ECF No. 1.  In addition, Burke was charged with Acts Affecting Personal Financial Interest, in violation of 18 U.S.C. § 208, and False Statements, in violation of 18 U.S.C. § 1001.  *Id.*

The Indictment alleges that in fall 2019, the Navy terminated a contract for Next Jump to provide a pilot program of their training to a small component of the Navy.  *See Burke, et al.*, ECF No. 1 at ¶ 12.  A year later, in September 2020, Next Jump had not reestablished business with the Navy, leading Kim and Messenger to initiate what they knew was prohibited communication with Burke, seeking his assistance generating a contract for Next Jump.  *Id.* at ¶¶ 17, 27.  At that time, Burke was a four-star Admiral in charge of United States Naval Forces Europe and Africa, with command authority over thousands of civilian and military personnel on those continents. *Id.* at ¶ 1.  Burke initially rebuffed Kim and Messenger's efforts, *see, e.g.*, *id.* at ¶ 27, 29, but after continued solicitation from Kim and Messenger, met with them twice in April 2021.  Following the second meeting, which was attended only by the defendants, Kim wrote that Messenger "felt slimy" because Burke "wants to work for us but we're asking for a deal first." *See id.* at ¶ 31. Kim described himself at the meeting as having been "nervous but calm." *Id.*

In July 2021, Burke, Kim, and Messenger met in Washington, D.C., and agreed that Burke would use his position as a Navy Admiral to steer a sole-source Navy contract to Next Jump in exchange for future employment at the company.  *Id.* at ¶ 35.  The defendants further agreed that Burke would use his official position to influence other Navy officers to award another contract to Next Jump to train a large portion of the Navy with a value Kim estimated to be "triple digit millions."  *Id.* at ¶¶ 25, 35.  In a text message following the meeting, Burke told "Person 3," a

personal companion who had attended the July meeting, that "Charlie [Kim] sent me a note . . . . I asked him to write out a job description – but I've essentially agreed to work for them . . . ."   Burke described the job floated by Kim and Messenger at Next Jump as a "real offer" that would get him "out of the DoD rut."

On November 16, 2021, Burke visited Next Jump's office in New York City and met with Kim and Messenger.   *Id*. at ¶ 36.   After the meeting, Burke told "Person 3," a personal companion, that Kim and Messenger had sweetened their job offer from July by increasing Burke's equity stake in Next Jump. Kim described the November 16 meeting in an email to Next Jump personnel, noting, among other things, that Next Jump was about to be "back into business with the Navy" and that Burke was going to propose a contract for his command that would be "signed before Xmas."   *Id*.   Two days later, Messenger commented to Kim via email: "Weird to think Burke gonna be on our team likely next summer eh[.]"

In December 2021, Burke ordered his staff to award a $355,000 contract to Next Jump to train personnel under Burke's command in Italy and Spain.   *See id*. at ¶ 38.   Next Jump performed the training in January 2022.   *Id*. at ¶ 44.   Thereafter, Burke promoted Next Jump in a failed effort to convince a senior Navy Admiral to award another contract to Next Jump.   *Id*. at ¶ 45.   Burke also promoted Next Jump, with Kim and Messenger's knowledge, to the UK Royal Navy.   *See id*. (anonymizing UK Royal Navy to "the Foreign Military").   To conceal his corruption relationship with Next Jump, Burke made several false and misleading statements to the Navy, including by creating the false appearance that Burke played no role in issuing the contract, and falsely implying that Next Jump's employment discussions with Burke only began months after the contract was awarded.   *Id*. at ¶ 46.

In October 2022, Burke began working at Next Jump at a starting salary of $500,000 per

year plus stock options and other related compensation.   Burke's relationship with Kim and Messenger soon soured.   Five days after Burke started at Next Jump, Messenger text messaged Kim to express her frustration with how their deal with Burke had unfolded.   Messenger stated that she had "been shoving down my anger except 1 outburst saying *no contract no job*. Go screw. The contract doesn't even cover 1 year salary. Feeling played." (Emphasis added.)   In January 2023, Burke resigned from Next Jump. In an email to Kim, Messenger admitted that she had "baited" Burke "into a contract for a job offer . . . ."   She feared that Burke resigned because he had finally realized that "Meghan and Charlie have no clue what they are doing" and created only "a façade of a successful company from the outside but nothing on the inside. They had no clue what [they were] doing and never did and sold beyond what [they were] capable of, borderline criminal."

### C.  Ongoing Grand Jury Investigation

On August 1, 2024, Next Jump was served a grand jury subpoena focused on the criminal liability of: (1) Next Jump, as a corporate entity, for the conduct set forth in the Indictment; and (2) Next Jump and its' employees, including Kim and Messenger, related to bribes offered to other military officers and government officials before and after the conduct described in the Indictment. The subpoena had a return date of August 29, 2024.[5]

### D.  The Trial Subpoena to Next Jump

On August 2, 2024, the Court set a trial date of February 19, 2025.   The Court also authorized the Government to issue a subpoena to Next Jump with a return date of November 1, 2024, approximately 110 days before trial.   *See Burke, et al.*, 1:24-CR-265 (TNM) (Aug. 2, 2024

---

[5]  On August 6, 2024, the Government and Next Jump's counsel met and conferred.   Next Jump waited until August 28, 2024, one day before the return date, not to file a motion to quash the trial subpoena, but rather to seek a briefing schedule to file a motion to quash. In other words, Next Jump pursued a path that would result in maximum delay.

Minute Entry).   That afternoon, the Government issued a trial subpoena to Next Jump.   *See* ECF No. 8-1.

The trial subpoena was narrower than the prior grand jury subpoenas and specifically tailored to request documents that were relevant to the conspiracy and bribery scheme charged in the Indictment for use at trial.   Specifically, the subpoena requested eight (8) categories of documents for the time period of September 1, 2019, to February 28, 2022 (amended to 2023, *see* n.1, *supra*), the date range of the charged conspiracy and was drawn from evidence obtained in support of the charges in the Indictment.   Specifically, the requests called for the production of:

(1) A copy of Kim and Messenger's Outlook calendars for the covered period "to include meeting dates, times, locations, attendees, written comments and attachments."

(2) All records and communications regarding Kim and Messenger's travel to Washington, D.C. in July 2021.

(3) All records and communications regarding all visits made by Burke to Next Jump's New York City office in November 2021.

(4) All records and communications regarding Burke's recruitment, hiring, and resignation from Next Jump.

(5) *AS REVISED*: "All records and communications, both internal and external, regarding business with or efforts to obtain business from the United States Navy or the U.K. Royal Navy."[6]

---

[6] On August 6, 2024, the Government notified Counsel by email that it revised Request 5 by narrowing it documents related to Next Jump's efforts to obtain business from the U.S. Navy and U.K. Royal Navy, the focus of the charged criminal conspiracy, as opposed to the initial request which called for the production of any documents related to efforts to obtain business from any branch of the United States Armed Forces or any foreign military service.   *See* Attachment 2. The Government reminded Next Jump of this modification on September 12, 2024.   Despite this, Next Jump repeatedly and erroneously only references the original request.

(6) All records and communications associated with the contract for Next Jump's training to Burke's command in January 2022, including materials to submit the bid, invoices sent, expenses incurred, and payments received.

(7) All communications with any current or former member of the U.S. Armed Forces, Department of Defense, Office of Personnel Management, or any foreign military service seeking to develop further business for Next Jump following its performance of the January 2022 contract acquired through bribery.

(8) For January 2021 to November 2022 only, all records and communications to third parties discussing Burke, the U.S. Navy, the UK Royal Navy and business with specific U.S. agencies or a foreign military.

*See* Attachment 1.  These requests are focused on documents related to: (1) the co-defendants previously identified meetings with one another, (2) the specific contract that Burke gave Kim and Messenger in the bribe scheme and its implementation, and (3) Next Jump's efforts to transform the bribed-for contract into additional business opportunities with the U.S. military and/or UK Royal Navy.

### III.    THE COURT SHOULD DENY THE MOTION TO QUASH BECAUSE THE TRIAL SUBPOENA IS PROPER UNDER THE LAW

#### A. The Requested Documents are Relevant, Admissible, and Specific

Next Jump claims that "the government has not and cannot show that the documents it seeks are relevant or admissible to its prosecution of the individual defendants."  *See* Motion at 6. Next Jump's claim is untethered from the facts and unsupported by the law.  The specific documents requested in the trial subpoena are relevant to the offenses charged in the Indictment and admissible under the Federal Rules of Evidence.

###### i.    The requested documents are relevant.

A party seeking to enforce a subpoena issued under Rule 17(c) must demonstrate "a sufficient likelihood" that the documents or information sought are "relevant to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700.  This first prong of *Nixon* standard is determined by Federal Rule of Evidence 401; thus, the Government meets relevancy burden if it shows that the sought documents have "'any tendency to make the existence of any fact that is of consequence more probable or less probable than it would be without the evidence.'"  *See Libby*, 432 F. Supp. 2d at 31 (quoting Fed. R. Evid. 401).

Next Jump claims that the Government has sought documents "outside the four corners of the Indictment."  Not so.  Each request is probative of an allegation in the Indictment.  For instance, Next Jump claims that the Request 1, which calls for the production of two outlook files containing the calendars for Kim and Messenger, would include "entirely irrelevant information." However, the Government's request only seeks calendar entries for the time period of September 1, 2019, through February 28, 2023, a time period covered by the Indictment which alleges relevant dates beginning in November 2019 (*see Burke, et al.,* ECF No. 1 at ¶ 12) and overt acts between September 23, 2020, and January 2023 (*see id.* at ¶¶ 27-47).[7]  Indeed, Kim, Messenger, and Burke

---

[7] The Government notes the October 3, 2023, grand jury subpoena to Next Jump requested these same Outlook Calendars for the period of September 2020 through May 2022.  Next Jump failed to produce those records. Should the Court believe that this request is too broad, the Government proposes modifying this request to be "Outlook calendar *entries* (to include dates, times, locations, attendees, comments and attachments) for Charlie Kim and Megan Messenger *related to internal and external meetings, appointments, calls or discussions regarding: (a) travel to Washington, D.C. on or about July 23, 2021 to meet with Burke; (b) Burke's visit to Next Jump office on November 16, 2021; (c) efforts to obtain business from the United States Navy, including, but not limited to, calls or meetings with Burke or his staff, or the U.K. Royal Navy; (d) OPM Task Order 24361822F0011 (relating to training performed in Italy and Spain in January 2022 for the United States Navy); (e) Robert Burke; and (f) any plans or offers for additional training or business opportunities with the United States Government following the January 2022 training.*" (Proposed modification in italics.)

met, virtually and in person, at various points in 2021 and 2022, including in July in Washington, D.C. and in November in New York City.   Through the requested records, the Government aims to establish that these meetings and calls occurred, to identify who was and was not present during these key meetings, and to obtain other evidence of the conspirators' statements that bear on their state of mind before, during, and after the events in furtherance of the charged offenses.   These documents are relevant and should be produced.

With respect to Request 2, Next Jump argues that the requested records are not relevant because the request is not sufficiently specific in that it does not identify the specific date of Kim's and Messenger's meeting with Burke in July 2021, in Washington, D.C.   However, as Next Jump is well aware, the relevant meeting, on July 23, 2021, was referenced in Paragraph 35 of the Indictment.   Request 2 seeks specific types of travel documents concerning Kim and Messenger's trip to Washington, D.C. only during July 2021, such as "reservations, itineraries, expense reports, receipts, tickets, purpose of travel, lodging information, meetings/events attended, and business meals . . . ." The documents related to this meeting are indisputably relevant to the charged offense.

Similarly, Request 3 calls for documents related to Burke's visit to Next Jump's NYC headquarters in November 2021.   As Next Jump is also aware, the relevant meeting occurred on November 16, 2021, and was referenced in Paragraph 36 of the Indictment.   Indeed, after that meeting, Kim stated, "we're about to go full force back into business with the Navy," and that Burke would aim to have a contract in place and signed before Christmas.   The documents related to this meeting are relevant to the charged offense and should be produced.

With respect to Request 4, Next Jump's motion fails to address why documents related to Burke's recruitment, hiring, and resignation would be irrelevant, nor could they.   Plainly, documents related to Burke's employment at Next Jump—a component of the *quid pro quo*—is

directly relevant to proving the allegations in the Indictment.  *See id*. at ¶¶ 20, 23, 24, 35, 47.   The documents are relevant and should be produced.

With respect to Request 5, Next Jump claims that the Government is requesting documents "regarding business with or efforts to obtain business from any branch of the United States Armed Forces" and that the request is "far beyond the allegations in the Indictment."  Motion at 6-7. But, as discussed above, on August 6, 2024, the Government narrowed Request 5 to only apply to efforts to obtain business from the U.S. Navy and U.K. Navy.  *See* Attachment 1.  The bribery scheme alleged in the Indictment alleges that Kim, Messenger and Burke agreed that, in exchange for future employment, Burke would: (1) use his "official position to steer a work force training contract from the U.S. Naval Forces Europe and Africa" to Next Jump; (2) "remain in the Navy for approximately six months after [Next Jump] performed the contract and, pointing to its performance, influence senior Navy officers to aware another contract to [Next Jump] – to train a larger portion of Navy – before Burke retired."  *See Burke, et al.,* ECF No. 1 at ¶ 35.  The Indictment also alleges that, as part of the scheme, Burke promoted Next Jump to senior United Sates Navy Officers and Senior Foreign Military Officials."  *See id*. at ¶ 45.  Contrary to Next Jump's claim, the documents in Request 5 directly relate to the allegations in the Indictment. The documents are relevant and should be produced.

With respect to Request 6, again, Next Jump does not address why documents specifically related to the contract at issue in this case including documents associated with the implementation of the contract (bids, proposals, applications, ethics certifications, invoices, expenses incurred, expense reports, and payments) are not relevant.   Next Jump does not address this request because there is no credible argument to make, much like Burke's employment history these documents are plainly probative of the alleged quid pro quo.  The documents are relevant and should be

produced.

With respect to Requests 7 and 8, these Requests, along with Request 5 seek records related to Kim's and Messenger's to efforts to convert the contract from Burke—obtained by bribe—into the hoped for "triple digit millions" follow up contract(s) with the U.S. Navy and U.K. Royal Navy that Kim and Messenger directed Burke to promote and obtain. These documents are also relevant because they explain why Kim and Messenger would bribe Burke for a $355,000 contract while paying him an annual salary of $500,000. Indeed, the documents establish Kim and Messenger's motive for engaging in the bribery scheme and why the initial contract from Burke was critical to Next Jump's long-term plans to expand within the Navy, to other branches of the United States Armed Forces and to foreign military forces. These documents are relevant to the charged conspiracy and bribery scheme and should be produced.

As set forth above, Next Jump's claim that the Government's document requests are "completely irrelevant to its prosecution," is empty rhetoric, divorced from the facts. Each and every document request seeks relevant evidence, tied to the allegations in the Indictment.

### ii.    The requested documents are admissible.

Next Jump, in a conclusory fashion, declares that any responsive document would be "inadmissible hearsay." As discussed above, considering the inherent difficulty in determining pre-trial the admissibility of certain documents, this Court has only required the moving party to establish that the documents are "arguably relevant and admissible under the Rules of Evidence" to satisfy the second prong of the *Nixon* standard. *Libby*, 432 F. Supp. 2d at 31. Judged by these principles, the Government easily meets its burden of showing that the requested documents are relevant, as the Government set forth above, and admissible under the Federal Rules of Evidence.

All of the responsive documents are likely admissible at trial because they are either not

hearsay under Federal Rule of Evidence 801(d)(2)—such as statements of a party opponent or coconspirator—or would fall within various hearsay exceptions, including the business records exception under Federal Rule of Evidence 803(6).

As an initial matter, all of the documents and communications responsive to Requests 1 through 8 of the trial subpoena are Next Jump's business records, and admissible under Federal Rule of Evidence 803(6).   For instance, Request 1 calls for the Outlook Calendars from Messenger's and Burke's Next Jump account, which would include, for instance, business meetings, calls and discussions as well as attendance lists, meeting invites, etc.   Request 2 calls for communications and records, maintained by Next Jump, related to the travel Kim and Messenger for a business meeting with Burke on July 26, 2021.   Request 3 calls for communications and records, maintained by Next Jump, related to a business meeting at Next Jump's office on November 16, 2021.   Both of these requests seek information likely admissible as statements of a party opponent or coconspirator statements or as business records.   Similarly, Request 4 calls for business records, maintained by Next Jump, related to the recruitment, hiring and resignation of Burke as an employee of Next Jump and would include, for instance, communications regarding strategies for recruiting Burke, offers made to Burke, benefits promised, responsibilities discussed, messaging regarding his termination.   Request 5 calls for business records related to Next Jump's efforts to obtain business from the U.S. Navy and U.K. Royal Navy, this would include, for instance, proposals, solicitations, presentations, etc.   Request 6 calls for business records related to OPM Task Order 24361822F0011 (the contract that is the subject to the indictment and would include bids, applications, ethics certifications, statements of work performed, purchase requisitions, solicitations, specifications, contracts, subcontracts, expenses reports, payments made and received, etc.   Requests 7 call for communications between

employees of Next Jump and members of the United States Armed Forces or a foreign military service, including the U.K. Royal Navy, related to the January 2022 training and any efforts or plans for additional training or efforts to use that training to expand to larger contacts or contracts with other entities.  Similarly, Request 8 calls for Next Jump business documents and communications related to their efforts to use the January 2022 engagement with the Navy or other government engagements as well as their employment of Burke, to obtain business opportunities with third parties.  Thus Requests 5 through 8 call for documents that Next Jump would maintain in the normal course of their business and are presumably admissible under Federal Rule of Evidence 803(6).

While it is possible that certain documents contain hearsay, it also may be the case that the documents are offered other than for their truth—such as their effect on the listener or their falsity. Simply put, while the Government cannot know exactly what the documents will show and the grounds for their potential admissibility at trial (since the Government does not have access to Next Jump's records) the Government believes that the categories of documents requested are likely admissible under the Federal Rules of Evidence and, as discussed above, the law only requires a showing of arguable admissibility, and the Government easily meets that standard here. *Libby*, 432 F. Supp. 2d at 31.

### iii.    The requested documents are specific.

Next Jump contends that the trial subpoena is overbroad and "a fishing expedition."  *See* Motion at 7-8.   But, as set forth above, the requests are specific and detailed—calling for defined categories of documents related to specific dates, specific meetings, specific contracts, specific business efforts, and the employment of a specific individual.[8]

---

[8] Given the detail and specificity of each request, it is simply not credible for Next Jump to claim

The third prong of the *Nixon* standard, that the documents are specific, can be "satisfied if there is a 'sufficient likelihood,' demonstrated through rational inferences, that the documents being sought contain relevant and admissible evidence."   *Libby*, 432 F. Supp. 2d at 32.   As this Court has previously acknowledged, the law does not place the party issuing the subpoena "in the impossible position of having to provide exquisite specificity as a prerequisite to enforcement of the subpoena by the Court, while [it] is denied access to the documents in question, thus making it impossible for [it] to be more specific."   *United States v. Poindexter*, 727 F. Supp. 1501, 1510 (D.D.C. 1989) (holding that, due to constitutional and privacy concerns, documents responsive to a subpoena to President Reagan would be submitted for *in camera* inspection prior to any release to the defendant that issued the subpoena); *accord United States v. Fitzsimmons*, 342 F.R.D. 18, 22 (D.D.C. 2022).   The moving party is required to "reasonably specify the information contained or believed to be contained on the documents sought," which serves "one of the major purposes of the specificity requirement . . .[to] provide the subpoenaed party . . . with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility." *Libby*, 432 F. Supp. 2d at 32 (citation omitted).

Here, Next Jump contends that the trial subpoena is overbroad because almost every request seeks "all records and communications" relating to their respective categories.   *See* Motion at 9; *see also* Attachment 1 at Requests 2 through 8.   As an initial matter, however, this

---

that the subpoena must be quashed because they don't have "enough knowledge about exactly what documents are requested" or that they cannot object on relevancy or admissibility grounds." *See id. at 8*. Next Jump must have already reviewed these documents given their representation to the Government that their response to the October 3, 2023, grand jury subpoena was complete and that there were no additional responsive documents. Indeed, it appears not that Next Jump does not know what is called for by the subpoena, but rather that they do not want to produce any documents which would further inculpate their co-CEOs, Messenger and Kim, which is not a basis to quash.

argument lacks important context.    While the trial subpoena requests "all records and communications," each request is tied to specific time periods and specific events and topics.    For example, Request 1 seeks the Outlook Calendars for Kim and Messenger for September 2019 through February 2023, the relevant period of the criminal conspiracy and the time period during which overt acts are set forth in the Indictment.    Similarly, Requests 2 and 3 seek records of Kim's and Messenger's meeting with Burke in Washington, D.C., on July 23, 2021, and in New York on November 16, 2021—specific time periods and locations.    Request 6 calls for documents related to the specific contract identified in the Indictment, which was negotiated in the second half of 2021 and performed in January 2022.    Requests 5, 7, and 8 seeks documents specifically related to the use of the initial Navy contract to obtain larger contacts from, among others, the United States Navy and the U.K. Royal Navy, as alleged in the Indictment.    Although a request may begin with "all records and communications," it is significantly narrowed by the language which follows.    Indeed, even if you removed the word "all," the same records and documents would required to be produced if they were responsive to the description which follows that limits the request.

Further, all of these requests were drafted based on specific indicia that records exist—in many cases, based on email seized from Kim and Messenger or obtained from United States Navy accounts.    In other words, this is not a fishing expedition and it is rational to infer from the evidence gathered to date that that all documents concerning these specific subject areas will be relevant and admissible.    *See Libby*, 432 F. Supp. 2d at 32.

Next Jump's claim that the word "all" compels quashing the subpoena is not supported by the case law, including those cases cited in their Motion.    Indeed, the sweeping requests in the subpoenas in Next Jump's cases bear no similarity to the requests here, which are targeted by time,

subject area, and event.   For example, Next Jump cites *United States v. Reyes*, 239 F.R.D. 591, 605-06 (C.D. Cal. 2006) to support its claim that a trial subpoena is overbroad when it seeks "all" of something.   But in *Reyes*, the district court quashed the trial subpoena because the broad language was tied to equally broad subject matter—such as "any and all information related to stock options issued *between 1994 and 1999 by a multi-million-dollar company with thousands of employees*."   *Id.* at 605-06 (emphasis added).   Those are not our facts. Next Jump has approximately twenty-five employees, not hundreds.   *See* Motion at 10.   Moreover, unlike the scattershot approach in *Reyes*, here the trial subpoena seeks specific documents within a confined period of time—the dates of the criminal activity in the Indictment and related specifically to the subject matter of the Indictment.

Similarly, Next Jump's reliance on *Khouj v. Darui*, 248 F.R.D. 729, 732 n.6 (D.D.C. 2008) is misplaced.   In *Khouj*, the Court merely noted, in *dicta*, that the subpoenas—issued to multiple financial institutions and the Post Master—did not meet the *Nixon* standard where they sought "'all documents relating to *any* account' held by Khouj, *without time limitation*."   *Khouj*, 248 F.R.D. at 732, n.6 (emphasis added).   Here, unlike in *Khoui*, each request is specifically tied to the Indictment and the conduct contained therein.   The other cases cited by Next Jump are likewise unpersuasive because they turned on facts and requests not present here.   *See, e.g.*, *United States v. Louis*, 2005 U.S. Dist. LEXIS 1087, at *2-3, 8-18 (S.D.N.Y. 2009) (the defendant was unable to reasonably specify what he hoped to obtain from a subpoena seeking records from the TSA about the formulation of security measures at LaGuardia Airport, where the case involved a concededly lawful search of the defendant's luggage); *United States v. Reudlinger*, 172 F.R.D. 453, 455-57 (D. Kan. 1997) (quashing a subpoena seeking an agent's entire case file and an entire IRS file because the defendant's relevancy proffer – he claimed merely that the file was "essential"

and "exculpatory" – was insufficient); *Cheney v. United States*, 542 U.S. 367, 386-87 (2004) (a subpoena was overbroad because it requested all documents within the possession of the Executive Branch relating to an energy task force, to include all documents regarding "any staff, personnel, contractors, consultants or employees of the Task Force.").

In sum, the Government has presented sufficient evidence, based on the investigation to date, that the Court can find the trial subpoena is sufficiently specific with respect to the records and communications requested in the trial subpoena.

### B. The Documents are Not Otherwise Procurable Before Trial by Exercising Due Diligence and Do Not Impose an Unreasonable Burden on Next Jump.

Next Jump argues that the subpoena should be quashed because (1) the Government can obtain the documents from the United States military, and (2) forcing Next Jump to respond would impose an unreasonable financial burden on them while their co-CEOs are under indictment. Motion at 9-10.    These arguments fail.

Next Jump's argument that they are only required to produce the documents if they are unavailable from another source, is not supported by the law.    *See* Motion at 9-10.    Next Jump is incorrect.    Indeed, the legal authority they cite does not stand for this proposition.[9]    The purpose of the "otherwise procurable . . . by due diligence" factor is, as the Supreme Court held in *Nixon*, to expedite trial by "providing a time and place before trial for the inspection of subpoenaed materials."    *Nixon*, 418 U.S. at 698-99.    Accordingly, the "otherwise procurable" component's purpose is not to determine whether a subpoenaed entity must produce records *at all*, but to

---

[9] Next Jump's reliance on *Poindexter*, 727 F. Supp. at 1509 is misplaced.    *See* Motion at 9. There, the court cabined the "otherwise procurable" to where "a defendant requests the production pursuant to a subpoena of documents possessed both by a President or former President and also by some other entity . . ."    727 F. Supp. at 1509.    In such an uncommon scenario, the court in *Poindexter* reasoned that the defendant "is required first to attempt to secure the materials from the other entity before resorting to coercion against the President."    *Id.*    (then citing the *Nixon* standard and two out-of-circuit cases regarding the "otherwise procurable" factor).

determine (assuming the subpoena is valid) whether the subpoenaed entity must produce requested documents *in advance of* trial as opposed to *at* trial.    Here, the Government already requested an early return date for the trial subpoena to Next Jump given that the Government cannot otherwise obtain the relevant documents and needs sufficient time before trial to review them.    The Court granted the Government's request on August 2, 2024.

The requested documents are not "otherwise procurable reasonably in advance of trial by exercise of due diligence."    *First*, the Government here has no basis to believe that it has previously received the requested documents from Next Jump.  *Cf. United States v. Trump*, 703 F. Supp. 3d 89, 93-94 (D.D.C. 2023) (denying a motion for Rule 17(c) subpoena, noting, *in dicta*, that a request for written interview transcripts were "unnecessary" because the defendant conceded he already received the exact transcripts at issue from the Government in discovery).    *Second*, many of the documents that the Government seeks—such as internal communications among Next Jump employees, communications between Next Jump employees and third parties, not using government emails, Next Jump documents, including drafts, as well as business records—are solely in the possession of Next Jump and not otherwise obtainable.    *Third*, even with the exercise of due diligence the Government could not locate and obtain relevant communications between Next Jump employees and the United States Government.    The Government is not aware of all of the military officers and civilian employees that Next Jump was communicating with, particularly with respect to their efforts to use the January 2022 Navy contract to obtain larger contract with the Navy, other branches of the armed forces, and other parts United States Government. Whereas Next Jump could locate such records by searching the emails of their 25 employees (some of whom Next Jump could easily exclude because those employees were not involved in this aspect of Next Jump's business), the Government would be required to search the emails accounts of

hundreds of thousands of members of the military and civilian employees, with servers throughout the world—some of whom may no longer maintain the relevant documents due to document retention issues. *Fourth,* the Government does not have access to emails and communications between Next Jump employees and foreign military services, including the U.K. Royal Navy, to whom they sought to leverage the 2022 contract with the U.S. Navy. Simply put, these documents are not "otherwise procurable reasonably in advance of trial by exercise of due diligence."

The Court should reject Next Jump's argument that it should not have to produce documents that may exist elsewhere for two additional reasons. *First*, such an outcome would unjustly reward Next Jump for their ongoing strategy to avoid and/or delay complying with valid legal process for as long as possible in order to benefit Kim and Messenger (indeed, Next Jump also has moved to quash a *third* grand jury subpoena issued in August 2024, now pending before Chief Judge Boasberg). As set out above, Next Jump did not produce records responsive to 11 of the 15 requests in the November 2023 grand jury subpoena.

*Second*, Next Jump's argument is circular and would lead to absurd results. If it were sufficient to excuse an entity from producing records in response to a subpoena because they may exist elsewhere, then every time multiple entities possessed responsive documents, one could quash a subpoena by pointing the finger to the other. And the other party could turn around and do the same. That cannot be the law.

Finally, there is no merit to Next Jump's claim that it should be excused because it would be financially unreasonable to force it to respond to the trial subpoena while its co-CEOs are under indictment. *See* Motion at 10. To be sure, Rule 17(c)(2) permits the Court to quash a subpoena "if compliance would be unreasonable or oppressive." Fed. R. Cr. P. 17(c)(2). But Next Jump's financial condition or the presence of criminal charges against its leadership alone do not establish

financial hardship such that quashing a subpoena is required.   And Next Jump simply makes conclusory statements about the financial burden involved.   In truth, there is good reason to believe the subpoena will not cost hundreds of thousands of dollars to respond to.   The company says that it has twenty-five employees, *see* Motion at 10, so the scope of materials within the company's possession should be limited.   Next Jump was content simply to produce Burke's entire email file to the Government in response to the first grand jury subpoena, with Counsel writing, "we thought we would just give you the whole thing."   So too could Next Jump comply with the trial subpoena here by running search queries and producing the responsive documents.

## IV.    CONCLUSION

For the foregoing reasons, the Government respectfully requests that this Court deny Next Jump's motion to quash and order it to produce the documents requested by November 1, 2024, the deadline identified in the trial subpoena.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:      /s/
Joshua S. Rothstein
Rebecca G. Ross
Assistant United States Attorneys
601 D Street N.W.
Washington, DC 20530
Office: (202) 252-4490

COREY R. AMUNDSON
Chief, Public Integrity Section
U.S. Department of Justice

     /s/
Trevor Wilmot
Kathryn E. Fifield
Trial Attorneys
1301 New York Ave. NW
Washington, D.C. 20530
Office: (202) 514-1412