1              UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLUMBIA
2

3    * * * * * * * * * * * * * *    )
     NEXT JUMP,                     )    Civil Action
4                                   )    No. 24-MC-00105
                 Plaintiff,         )
5                                   )
       vs.                          )
6                                   )
     UNITED STATES OF AMERICA,      )    Washington, D.C.
7                                   )    October 18, 2024
                 Defendant.         )    10:57 a.m.
8                                   )
     * * * * * * * * * * * * * *    )
9

10
              TRANSCRIPT OF STATUS CONFERENCE
11        BEFORE THE HONORABLE TREVOR N. McFADDEN
              UNITED STATES DISTRICT JUDGE
12

13

     APPEARANCES:
14

     FOR THE PLAINTIFF:     REED BRODSKY, ESQ.
15                          GIBSON, DUNN & CRUTCHER, LLP
                            200 Park Avenue
16                          New York, New York 10166

17

     FOR THE DEFENDANT:     TREVOR C. WILMOT, ESQ.
18                          KATHRYN E. FIFIELD, ESQ.
                            U.S. DEPARTMENT OF JUSTICE
19                          1301 New York Avenue, Northwest
                            Tenth Floor
20                          Washington, D.C. 20530

21

     REPORTED BY:           LISA EDWARDS, RDR, CRR
22                          Official Court Reporter
                            United States District Court for the
23                            District of Columbia
                            333 Constitution Avenue, Northwest
24                          Room 6706
                            Washington, D.C. 20001
25                          (202) 354-3269

```
 1              THE COURTROOM DEPUTY:  Your Honor, this is
 2    Miscellaneous Case 24-105, Next Jump versus the United
 3    States of America.
 4              Can the parties please come forward to identify
 5    yourselves for the record.
 6              MR. BRODSKY:  Good morning, your Honor.  Reed
 7    Brodsky on behalf of Next Jump.  With me at the table are
 8    Charlie Kim and Meghan Messenger.
 9              THE COURT:  Good morning, folks.
10              MR. WILMOT:  Good morning, your Honor.  Trevor
11    Wilmot and Kathryn Fifield, trial attorneys from the
12    Department of Justice, on behalf of the United States.
13              THE COURT:  Good morning, folks.
14              I have considered the joint notice regarding the
15    reissued trial subpoena, ECF No. 16.  I will now rule on the
16    various objections contained in it.
17              Subpoenas are governed by Federal Rule of Criminal
18    Procedure 17(c).  That allows for a court to quash or modify
19    a subpoena if compliance would be unreasonable or
20    oppressive.
21              The question of whether a subpoena is unreasonable
22    or oppressive is tripartite.  First, the Court must ask
23    whether the documents sought are relevant, according to
24    United States versus Nixon, 418 U.S. 683, Page 700, from
25    1974.
```

1          Relevance means the documents have, quote, "any

2     tendency to make the existence of any fact that is of

3     consequence to the determination of the action more probable

4     or less probable than it would be without the evidence,"

5     closed quote, from Federal Rule of Evidence 401.

6          I think this is a relatively low burden, although

7     it is probably higher than would normally be required for

8     civil discovery.

9          Second, the Court asks whether the documents are

10    admissible under the Federal Rules of Evidence.  I'm looking

11    to *Nixon* again at Page 700.  Nothing can be -- evidence can

12    be deemed admissible, quote, "for a variety of purposes,

13    including impeachment," closed quote, from *United States*

14    *versus Libby*, 432 F.Supp.2d, 26, Page 31, from this district

15    in 2006.

16          It is true that it will often be difficult at the

17    pretrial stage to determine with precision the admissibility

18    of certain documents, looking again to *Libby*, Page 31.

19    Thus, a movant need only show that the evidence is, quote,

20    "arguably relevant and admissible," closed quote, from the

21    same page.

22          Third, the subpoena must be written with

23    specificity.  I'm looking again to *Nixon*, Page 700.  This

24    means that the movant, quote, "must be able to reasonably

25    specify the information contained or believed to be

1    contained in the documents sought, rather than merely hope

2    that something useful will turn up," closed quote, from

3    *United States versus Louis*, 2005 Westlaw 180885 at *5 from

4    the Southern District of New York, January 27, 2005.

5            The specificity requirement cabins a Rule 17(c)

6    subpoena to its intended purpose.  The Supreme Court has

7    been clear that Rule 17(c) is, quote, "not intended to

8    provide a means of discovery for criminal cases," from

9    *Nixon*, Page 698.

10            That is because only, quote, "a narrow set of

11    discovery should be permitted in criminal cases," closed

12    quote, from *United States versus Carter*, 15 FRD 367,

13    Page 369, from this district in 1954.

14            The function of a Rule 17 subpoena is thus more

15    circumscribed.  Quote:  "Its chief innovation was to

16    expedite the trial by providing a time and place before

17    trial for the inspection of subpoenaed materials," closed

18    quote, from *Nixon*, Pages 698 and 99.

19            So the specificity constraint is there to ensure,

20    quote, "that the application is made in good faith and is

21    not intended as a general fishing expedition," closed quote,

22    from *Nixon*, Page 700.

23            The movant cannot go hunting through the party's

24    documents willy-nilly.  It must be clear at the get-go about

25    what it is looking for.

1          In sum, the movant must demonstrate relevance,

2     admissibility and specificity.  Other relevant

3     considerations include whether the evidence is, quote, "not

4     otherwise procurable reasonably in advance of trial by

5     exercise of due diligence," closed quote, and whether the

6     movant, quote, "cannot properly prepare for trial without

7     such production," closed quote, from *Nixon*, Page 699.

8          Finally, quote, "Decisions regarding the quashing

9     or modification of Rule 17 subpoenas are committed to the

10    district court's discretion," closed quote, from *United*

11    *States versus Cuthbertson*, 63 F.2d 139 at Page 145 from the

12    Third Circuit in 1980.

13         With these principles in mind, I turn to the

14    subpoena at hand.

15         On an initial note, I want to remark that I do not

16    think either of the parties have acted in bad faith, despite

17    the ongoing dispute and frustration.  So no presumption or

18    perception of malevolence is factoring into my ruling today.

19         Now on to the discrete requests and objections:  I

20    start with Request 1(c).  The Government has agreed to cut

21    the "including, but not limited to" language and rephrase

22    Question 1(c) to read, quote, "calls or meetings with Burke

23    or his staff, calls or meetings with the U.K. Royal Navy or

24    calls or meetings within Next Jump concerning efforts to

25    obtain business from the United States Navy," closed quote,

1    during the listed time periods.  I'm looking to Page 4 of

2    the joint notice.

3         I think this revision satisfies the *Nixon*

4    standard.  The requested documents will likely be relevant

5    because they emphasize the alleged objects of the bribery

6    scheme during significant timeframes of the indictment.

7         They are admissible because they are limited to

8    business records.  And I'm looking to Federal Rule of

9    Evidence 803(6).  And they are specific because they are

10   cabined to a narrow universe of documents, Outlook calendar

11   entries, that focus on a handful of narrow categories.

12        I think Next Jump's assertions to the contrary are

13   unavailing.  Next Jump insists that the request fails

14   because it seeks to search calendar entries over multiple

15   months, which is beyond the seven-day period quashed in the

16   *Libby* decision.

17        But the *Libby* decision did not invoke a week's

18   worth of records as a talisman for specificity.  Indeed, the

19   Court quashed the Defendant's request for a week's worth of,

20   quote, "all appointment calendars, telephone logs and

21   records of telephone calls placed or received by the

22   recipient," closed quote, because, quote, "the Defendant was

23   simply seeking to examine general categories of documents

24   with the hope that they contain information that might be

25   helpful to his defense," closed quote, from *Libby*, Page 35.

1          I don't think that's the case here.  The

2     Government has tailored the requested documents to subjects

3     that are directly pertinent to the alleged corruption, and

4     the search is focused on particular time periods that are

5     highly relevant to this case.

6          It is not merely perusing the Rolodex and

7     appointment book for Next Jump, like the Defendant tried to

8     do in *Libby*.  Instead, quote, "Each request provides a

9     narrow subcategory of documents being sought, which cover a

10    discrete topic and typically limit the pertinent timeframe,"

11    closed quote, from *Libby*, Page 38.

12         In any event, while I think *Libby* is a useful

13    guidepost for me, it is of course not binding.

14         Finally, I note that I think the fact that we're

15    looking at Outlook calendar entries to begin with really

16    narrows this to a pretty limited subset of information

17    that's being sought and further cabins the Government's

18    request.

19         For all these reasons, I will uphold Request 1(c)

20    as presented by the Government in the joint notice with that

21    one tweak that they offered.

22         Moving to Request 1(d), Next Jump seeks to add in

23    a limited timeframe to winnow down the request.  According

24    to Next Jump, the failure to do so renders the request a

25    fishing expedition.

1          I am not convinced.  The request is already highly

2    circumscribed by limiting itself to one particular contract

3    that is the center of Burke's upcoming criminal trial.  So

4    any business records concerning that contract are almost

5    certainly relevant and admissible as well as sufficiently

6    specific.

7          So I will overrule this objection.

8          Now Request 1(e):  Next Jump claims that the

9    Government may not request all Outlook entries referencing

10   Burke without identifying specific dates on which those

11   entries were made.

12         But I do not think the *Nixon* standard requires so

13   much.  Any mention of Burke on the calendars of Kim and

14   Messenger will be relevant to the alleged bribery ring.  And

15   targeted dates are not necessary to make the request

16   specific.  The request is already tailored to a small subset

17   of documents that identify the individual at the center of

18   the prosecution.

19         So I am overruling Next Jump's objections as to

20   Request 1(e).

21         Moving to Request 1(f):  Next Jump wants to strike

22   the entire request.  It points out that the Government

23   admits that it does not have any idea of whether there were

24   any efforts to obtain business from the U.S. or U.K. Navy

25   after January 2022.  I'm looking to the joint notice at 6.

1          So according to Next Jump, this request is being

2     used as a discovery device, not a targeted search for

3     reasonably known, relevant evidence, from the joint notice,

4     Page 7.

5          I agree with Next Jump here.  The Government has

6     not provided concrete evidence that employees from Next Jump

7     contacted the United States Navy or the U.K. Royal Navy to

8     gin up business after January 2022.  They have only offered

9     evidence that Burke did so.

10          Thus, this broad request exemplifies the mere hope

11     that the desired documents would provide favorable evidence.

12     But a Rule 17(c) subpoena cannot properly be issued upon a

13     mere hope.  That's according to *United States versus Hang*,

14     75 F.3d 1275, from Page 1283, from the Eighth Circuit in

15     1996.

16          More, it is plausible that Next Jump tried to

17     obtain business from the United States Navy or the Royal

18     Navy after 2022 through channels unrelated to Burke.  So I

19     have also relevance concerns with the topical and temporal

20     breadth of Request 1(f).  I therefore am striking it from

21     the subpoena.

22          Turning now to Request No. 2:  The attachments to

23     the briefing indicate that Next Jump objects to the "purpose

24     of travel" language.

25          But the joint notice stipulates that Next Jump

1    agrees to this request.  I am going to hold Next Jump to

2    their stipulation in the joint notice and adopt Request 2

3    with the "purpose of travel" language.

4         Turning to Request 4, Next Jump objects to the

5    Government's request on several grounds and offers a

6    wholesale modification.  But I do not think the request as

7    is fails the *Nixon* standard.

8         For one, contrary to Next Jump's assertions, the

9    period of 23 months does not fail the specificity

10   requirement.  Coupled with the small batch of records the

11   request seeks, the timeframe is sufficiently limited to a

12   pertinent window in the indictment, from Kim and Messenger's

13   first phone call with Burke to just after Burke's

14   resignation from the company.

15        The fact that Next Jump's co-CEOs allegedly were

16   involved in a long-running conspiracy must be relevant to an

17   analysis of what counts as an appropriately tailored

18   subpoena.  To say otherwise would hamper the Government's

19   ability to subpoena relevant evidence in the most

20   complicated and serious of cases.

21        Next, I do not buy Next Jump's claim that the

22   request for all records fails the admissibility test, nor do

23   I agree that the requested communications must be limited to

24   those with Defendants or witnesses the Government intends to

25   call at trial for them to be admissible.  And I'm looking to

1     the joint notice, Pages 7 and 8.

2          Documents falling under Request 4 are admissible

3     under Rule 803(6) because the request is limited to business

4     records.  By claiming otherwise, Next Jump misunderstands

5     the operative definitions in the subpoena.  The Government

6     has made clear that, quote, "'Record' means business records

7     responsive to the requests that meet the requirements of

8     Federal Rule of Evidence 803(6)," closed quote, from Exhibit

9     A, Page 3, at ECF 16-1.

10         Next Jump's assertion that "records" is too broad

11    of a category for admissibility purposes is therefore

12    incorrect.

13         I should note Next Jump makes this mistake

14    repeatedly in its objections, failing to read the definition

15    portion of the subpoena into the specific document requests.

16         For the same reason, the communications do not

17    need to come from Burke himself to be admissible as a

18    statement of a party opponent under Rule 801(d)(2).  They

19    can come in as business records.

20         In sum, I reject Next Jump's objections to Request

21    4.  I uphold that request as submitted by the Government.

22         Moving on to Request 5:  I tend to agree with Next

23    Jump's position that, at least as it relates to the U.S.

24    Navy, the time period is so broad as to defeat the relevance

25    and specificity requirements.

1    The Government seeks all records from Next Jump

2    regarding the United States Navy for roughly two and a half

3    years.  But the Government has not shown, quote, "a

4    sufficient likelihood that the documents actually contain

5    relevant information," closed quote, from *United States*

6    *versus Fitzsimons*, 342 FRD 18, Page 21, from this district

7    in 2022.

8    Again, it is plausible that Next Jump was pursuing

9    avenues outside of Burke to shore up business with the Navy

10   during these years.  So there is a possibility that some of

11   these records would return irrelevant information.

12   Further, the request reads more like a search for

13   information to buffer the Government's claims that it does a

14   good-faith effort to obtain -- than it does to show a

15   good-faith effort to obtain identified evidence.  And I'm

16   looking to *Cuthbertson*, Page 144.

17   For that reason, it also fails for lack of

18   specificity.  This feels to me too much like the fishing

19   expeditions that *Nixon* forbids.

20   But I find that the request as it relates to the

21   Royal Navy is fine.  It is cabined to the months surrounding

22   the contract discussed in the indictment, so the responsive

23   documents will likely be relevant to that contract.  And the

24   winnowed timeframe substantially curtails the possible

25   universe of responsive documents, rendering the request

1    sufficiently specific.

2           I will turn now to Request 6.  Next Jump insists

3    that a very limited timeframe is necessary to make this

4    request sufficiently specifically.

5           But I do not think the imposition of a timeframe

6    is required here.  The request is already highly

7    circumscribed.  It seeks business records about a very

8    specific contract that is at the core of the indictment.

9    Thus, even without the durational limitation, the request is

10   both relevant and specific.

11          Now the penultimate request, No. 7:  Next Jump

12   insists that a narrowed window is required lest the request

13   is a mere discovery device.

14          I tend to agree for the reasons I've already

15   discussed.  Namely, I fear the broader window would yield

16   potentially irrelevant documents, and the Government has not

17   been able to, quote, "reasonably specify the information

18   contained or believed to be contained in the documents,"

19   closed quote, from *United States versus Binh Tang Vo*, 78

20   F.Supp.3d 171, Page 181, from this district in 2015.

21          The Government insists that the imposition of a

22   narrower timeframe will deprive the Government of records

23   concerning Next Jump's efforts to obtain the object of the

24   bribe scheme, the follow-up high-value contract.  I'm

25   looking to Page 10.

 1           But, quote, "The relevance and specificity

 2    elements require more than conjecture as to a document's

 3    contents," closed quote, from *United States versus*

 4    *Stevenson*, 727 F.3d 826, Page 831, from the Eighth Circuit

 5    in 2013.

 6           They require the Government to make clear that the

 7    records they are seeking actually exist and are probative of

 8    the ongoing prosecution.

 9           The Government has failed to do that for the full

10    period here.  So I will adopt Next Jump's time limitation

11    and I will excise the final phrase that Next Jump objects

12    to.

13           Finally, I consider Request 8.  The large

14    timeframe and broad subject matter of this request render it

15    insufficiently specific and potentially irrelevant.  It is

16    not tied to discrete documents that the Government already

17    knows are in existence.  Instead, the Government is hoping

18    that the request will turn up favorable evidence on

19    contracts it is not yet aware of.

20           But again, the *Nixon* standard is, quote, "not

21    satisfied merely because a defendant can articulate what

22    they hope to find in the subpoenaed evidence."  That's

23    according to *Fitzsimons*, Page 21.

24           So I will strike the final request from the

25    subpoena.

1          That concludes my oral ruling.

2          Mr. Brodsky, any questions about that revised

3     subpoena?

4          MR. BRODSKY:  No, your Honor.

5          I do appreciate, your Honor, the Court's attention

6     to this.  I know it took time to consider it and have two

7     court conferences for it.

8          My only -- and, your Honor, I really appreciate

9     the comment that Next Jump did not act in bad faith in

10    making its applications.

11         I did want to remark that my -- there are some

12    requests here that -- we obviously will comply with the

13    Court's order and we will produce the responsive documents.

14         My concern about some of the Government's remarks

15    is that if we make an objection or we submit that the law is

16    a certain way, the Government twice now in briefing to a

17    company that has investors, employees, thousands of clients,

18    has suggested we did so intentionally to not produce

19    information.

20         And my only concern is that the Government

21    interprets the application of the law or our seeking relief

22    as something that's not appropriate, as they've drafted

23    their papers.

24         I just highlight this because my concern is --

25    the Government has lots of information and documents.  My

1    concern is down the road an accusation that somehow we

2    didn't produce something and we violated, you know, we

3    obstructed, we did something inappropriate based on how

4    they've submitted that us making an application to this

5    Court is somehow designed intentionally to avoid compliance

6    with the law.

7            THE COURT:  Are you asking me to do something

8    there?

9            MR. BRODSKY:  Well, your Honor, I think you've --

10   as I take it, you've made the finding that Next Jump did not

11   act in bad faith in its original submission and in its

12   motion to quash and in its application with respect to this

13   modified Government subpoena.

14           Is that correct?

15           THE COURT:  That's correct.

16           And also, I mean, obviously, this now modified

17   subpoena is substantially different from the one you

18   initially objected to.

19           MR. BRODSKY:  Yes.

20           THE COURT:  So I don't see how the Government

21   could say that you had some sort of irrelevant or completely

22   inappropriate objections.  So I certainly found to the

23   contrary.

24           MR. BRODSKY:  Thank you, your Honor.

25           I think the only pending question -- obviously,

1    the Government may have comments on this -- is the return

2    date.

3            THE COURT:  Yes.  I want to hear from you about

4    that in just a minute.

5            But let me make sure Mr. Wilmot understands my

6    ruling.

7            MR. BRODSKY:  Thank you, your Honor.

8            MR. WILMOT:  Thank you, Judge.

9            I believe I do understand it.  We've taken notes.

10   And what we will do is revise once more the subpoena and

11   reissue it to Next Jump in accordance with the Court's

12   ruling here today.

13           I join counsel in expressing gratitude for the

14   Court's attention to this matter.

15           THE COURT:  Am I correct in assuming you're still

16   looking for this to come by November 11th -- November 12th?

17           MR. WILMOT:  Yes, Judge.  That's what we're

18   seeking.  The reason is predominantly that -- the Court may

19   be aware that the motions *in limine* deadline for the opening

20   motions in the Burke trial is, I believe, set for November

21   the 22nd.

22           So we've built this date in with an eye towards

23   making sure we have time to review the records from Next

24   Jump while seeking appropriate -- filing any appropriate

25   motions with the Court to comply with that deadline and to

1    avoid what I think the Court, the Government and

2    Mr. Parlatore, Mr. Burke's counsel, would want to avoid,

3    which is some sort of last-minute motion.

4            We also, as Mr. Rothstein had notified the Court

5    many hearings ago, have -- will have an obligation to turn

6    many, if not all, of these records over to counsel for

7    Mr. Burke.

8            Certainly that will require some time for

9    Mr. Parlatore to review those records, not knowing of course

10   what the volume will be.

11           Those were the principal reasons behind this

12   return date of November the 12th.

13           THE COURT:  That makes sense to me.  I guess I'm

14   wondering the likelihood that you'd be filing a motion.  I

15   guess I could imagine Mr. Burke filing a motion.

16           MR. WILMOT:  That's a good point, too, your Honor.

17           THE COURT:  Am I missing something?  What's the

18   likelihood that you'd be filing a motion *in limine*?

19           MR. WILMOT:  Without knowing what the documents

20   show, it's really hard to assess that definitively.  We may

21   move *in limine* to affirmatively admit certain records.  It

22   may be a tactic that we try to get a ruling from the Court

23   in advance of trial for some of these records.  I just can't

24   really assess that in a vacuum.

25           THE COURT:  Can you remind me when the trial is?

1    MR. WILMOT:  I believe that it begins on

2    November -- I beg your pardon -- February 19th.

3    THE COURT:  Thanks.

4    MR. WILMOT:  Yes, your Honor.

5    THE COURT:  So, Mr. Brodsky, obviously, you're

6    just hearing now these precise permutations of what the

7    subpoena is going to look like.  But I think -- I'm sure

8    you've talked with your client in general about their

9    ability.

10    Do you have concerns with the current return date?

11    MR. BRODSKY:  For some of the requests I have some

12    concerns about the current return date.

13    My understanding based on the prior briefing was

14    that the Government was interested in an early return date

15    because of an anticipated potential trial date in November

16    and December.  And now the first trial is -- of the

17    bifurcated -- of the two trials, the first is in February.

18    So I think we would ask for a little bit of a

19    later date than November.  We could give a rolling

20    production, but my anticipation is some of the requests will

21    take a little longer than this November date.

22    THE COURT:  So Mr. Wilmot, I think, has laid out

23    fair reasons for his timing.  I think I need more from you

24    than just your second-guessing of my trial schedule for this

25    other case.

```
1              MR. BRODSKY:  Well, your Honor, what I would like
2     to do is assess -- I could provide the Court with a
3     submission, a one-paragraph submission if your Honor wants,
4     by early next week to inform you as to why or whether one or
5     two particular requests will take an extended period of
6     time.  It may not.  Maybe we can accomplish it all.  But if
7     we can't accomplish it all, I would like the leeway to be
8     able to produce it after this first date that the Government
9     has provided in November.
10             It may be that Mr. Parlatore does not have any
11    objections to Next Jump producing the documents after
12    November, given that the Government's unlikely to have any
13    motions in connection with these documents.
14             THE COURT:  Yes.  But I think he might.  Right?
15    He might have.
16             MR. BRODSKY:  He might.  He might.
17             THE COURT:  Yes.
18             MR. BRODSKY:  We could seek Mr. Parlatore's -- if
19    Mr. Parlatore doesn't anticipate having any objections, he
20    has 28 months' worth of email boxes of Mr. Kim and
21    Ms. Messenger.  And I find it hard to know what he's going
22    to be moving with respect to that, for example, those
23    hundreds of thousands of pages of documents.
24             But if Mr. Parlatore opines that he doesn't
25    anticipate having any objections to documents produced in
```

1    connection with these narrowed requests, then I think that

2    we would have -- and we can confer with Mr. Parlatore in

3    advance of making a filing with this Court.  I would think

4    that we would -- should be given a little bit of time to

5    produce certain requests.

6            THE COURT:  I think your idea of going back and

7    talking -- I mean, primarily with your client, but certainly

8    Mr. Parlatore, is a good one.

9            I'll just say, I think sometime next month the

10   date that we set makes sense.  I'm really going to be --

11   you're going to need to give me logistical concerns on your

12   end more than what you think makes sense in terms of my

13   criminal case.

14           MR. BRODSKY:  I understand.

15           THE COURT:  I think also I just want to kind of

16   revert to how I typically handle discovery issues.  Even

17   though this is not technically a discovery one, it certainly

18   is feeling more and more like it.

19           I'll just ask the parties to contact chambers

20   jointly if there's some sort of concern about the timing

21   that the trial subpoena currently has.  I'm not looking for

22   briefing at this point and I'm not setting any specific

23   date, although I'll tell you, the sooner you do that, the

24   more likely I'm going to be to believe that this is -- well,

25   I'll put it the other way:  Don't come to me late and expect

1   an extension.

2            MR. BRODSKY:  Yes, your Honor.

3            THE COURT:  All right.  Anything further,

4   Mr. Brodsky?

5            MR. BRODSKY:  No.  Nothing further.  Thank you,

6   your Honor.

7            THE COURT:  Mr. Wilmot?

8            MR. WILMOT:  One moment, please, your Honor.

9            THE COURT:  Sure.

10           MR. WILMOT:  (Confers with co-counsel privately.)

11           I've heard everything your Honor says.  For

12   purposes of reissuing this subpoena, however, am I to

13   believe that for now we will keep this the return date?

14           THE COURT:  Yes.

15           MR. WILMOT:  Okay.  Thank you, sir.  Nothing

16   further.

17           THE COURT:  Thanks.  You all have a good weekend.

18           (Proceedings concluded.)

19

20

21

22

23

24

25

1                           **<u>CERTIFICATE</u>**

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4       certify that the foregoing constitutes a true and accurate

5       transcript of my stenographic notes, and is a full, true,

6       and complete transcript of the proceedings produced to the

7       best of my ability.

8

9

10                   Dated this 18th day of October, 2024.

11

12                   <u>/s/ Lisa Edwards, RDR, CRR</u>
                     Official Court Reporter
13                   United States District Court for the
                        District of Columbia
14                   333 Constitution Avenue, Northwest
                     Washington, D.C. 20001
15                   (202) 354-3269

16

17

18

19

20

21

22

23

24

25